**Smolik**
**v.**
**Andrews Custom Builders, Inc.**
*[Cite as 3 AOA 318]*

*Case No. 89-L-14-023*
*Lake County, (11th)*
*Decided May 25, 1990*

*Mark A. Smolik, Zegler, Metzger & Miller, 5528 Mayfield Road, P.O. Box 24274, Cleveland, Ohio 44124, for Plaintiff-Appellee.*

*Thano G. Pasalis, 1575 Illuminating Building, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*J. Melvin Andrews, Andrews and Todoroff, 35475 Vine Street, for Defendant-Appellant.*

FORD, J.

In 1987, appellee, Patricia Smolik, entered into an agreement with Scott M. Andrews, Inc., to aid with the sale of custom built homes.[1] In exchange for her assistance, she was to be compensated based upon a percentage of the sales price of the home for which she produced a buyer. However, she was not paid, and on January 8, 1988, she filed a declaratory judgment action to ascertain her rights. Then, on January 22, 1988, appellee filed an amended complaint and prayed for damages in the amount of $22,123 for commissions from certain real estate transactions. Specifically, the complaint identified sales involving eight home buyers. (Other parties intervened or filed cross-claims or cross-complaints in this action, but all were eventually resolved or dismissed, and they are not relevant to this action.)

From the onset of this action, appellee requested discovery of the sales contracts for the transactions in which she was involved. After appellant failed to produce the requested materials pursuant to her discovery request, and at a deposition when served with a subpoena duces tecum, appellee filed a motion to compel production. On November 16, 1988 a hearing was had, and the court ordered that appellant produce the documents which contained the sales information regarding the eight original parties and five additional home buyers listed in appellee's duces tecum.

On November 18, 1988, appellee amended her prayer for "real estate commissions, or other reasonable compensation, due her as determined by [the trial] court." She also filed a supplemental pleading with leave of court based upon the theory of *quantum meruit.* Another amended pleading added transactions involving the other parties identified in the duces tecum and sought the amount as prayed for in the complaint "* * * plus additional commissions or compensations for all transactions with whom [appellee] worked and for whom [appellant] constructed subsequent to the filing of her original complaint * * *." No dollar amount was specified in this pleading.

The trial was ultimately held on January 23, 1989. At the conclusion of the presentation of appellee's evidence, her counsel moved to amend the complaint to conform to the evidence and prayed for damages in the sum of $47,800. Appellant objected, but the court overruled the objection. The jury returned a verdict for appellee in the amount of $51,158.16

Appellant filed a motion for judgment notwithstanding the verdict, but this too was overruled by the court on April 7, 1989. Appellant properly appealed raising the following assignments of error:

"1. The trial court erred to defendant's prejudice in allowing plaintiff to amend the money demand to her complaint during the course of trial in violation of Civil Rule 54 (C)1.

"2. The trial court erred to defendant's prejudice in overruling defendant's motion to reduce the amount of the final judgment to the sum claimed in plaintiff's demand in accordance with the limitation set forth in Civil Procedure Rule 54(C).

"3. The trial court erred to defendant's prejudice in overruling defendant's motion for dismissal of plaintiff's complaint due to failure of plaintiff to prove she was licensed by the State of Ohio to perform the real estate sales services agreed to be performed.

"4. The court erred to defendant's prejudice in failing to exclude eight of the sales transactions from jury consideration.

"5. The trial court erred in failing to reduce plaintiff's final judgment to the sum demanded."

Appellant, in the first, second, and fifth assignments of error challenges the appropriateness of the final monetary award. All three focus upon Civ. R. 54(C), raising similar issues, and therefore they will be treated in a consolidated fashion.

Civ. R. 54(C) provides:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled; however, *a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial.* Additional service of process is not necessary upon such amendment." (Emphasis added.)

The Ohio Supreme Court, in *Bishop* v. *Gardina* (1985), 20 Ohio St. 3d 26, examined the dictates of Civ. R. 54(C). The court stated:

"* * *The Civil Rules are, of course, the law of this state with regard to practice and procedure in our state courts. Section 5(B), Article IV, Ohio Constitution.

"Civ. R. 54(C) is clear on its face. No damages awarded may exceed the prayer that is in

effect on the sixth day prior to trial. In this case, the punitive damages awarded greatly exceeded appellant's prayer, and the court of appeals properly reduced the award to conform to the requested amount.

"* * *

"A major purpose of the limitation in the rule is to put the defendant on notice prior to trial as to his potential liability. The Ohio rule was specifically drafted to be distinguished from its federal counterpart which permits an award that exceeds the prayer. See Fed. R. Civ. P. 54(C); Staff Notes to Civ. R. 54(C)."

Plaintiffs in this state are thus forced to determine the approximate amount of their total damages prior to trial. * * * Nothing prevents the unsure plaintiff from erring on the high side. The duty of the jury (or trial judge) is to match the damages to the proof brought fourth * * *." *Gardina, supra,* at 28-29 (Footnote omitted.)

Even when examined in light of the more liberalized pleading rules, the limitation imposed by the "seven day prayer restriction" has been strictly applied. In *William* v. *Glen Manor Home for Jewish Aged, Inc.* (1986), 27 Ohio App. 3d 246, the following proposition was expressly set forth in the syllabus:

"The specific time constraint of Civ. R. 54(C), allowing amendment not later than seven days before trial, is controlling over the more general time provision or Civ. R. 15(A)."

Similarly, the more specific limitations regarding amendment of the prayer espoused in Civ. R. 54(C) would supersede the more liberal pleading rules contained in Civ. R. 15(B).

Civ. R. 54(C) was adopted to permit the plaintiff, based upon the fruits of a discovery harvest, to amend the prayer to reflect what has been learned through the pre-trial information exchange. However, the rule requires this amendment to be made no later than seven days before trial. This is to permit the defendant to assess his potential exposure in the law suit. These underlying tenets were expressed in the Staff Notes to Civ. R. 54(C).

"* * * After discovery had been completed, plaintiff might learn that the injuries involved were much more extensive than had originally been anticipated * * * Also under the rule, defendant, at least at trial time, would be secure in the knowledge that he may be liable only to the extent of the amended demand for judgment."

The comment thus expresses the two principles which formed the underlying basis for the rule. These are notice to the defendant of his potential exposure; and the judiciary's desire to provide just and equitable compensation for latent injuries unrecognized or undetermined at the time of the pleading but ascertainable through the discovery exercise.

As long as the parties fulfill their respective discovery obligations, the rule functions properly, and the two countervailing interest are satisfied. The plaintiff is afforded the opportunity to extensively evaluate the parameters of damages suffered, and subsequently timely amend the prayer to provide notice of the alleged liability to the defendant prior to trial. However, difficulties accrue when one party fails to comply with, or provides inaccurate, incorrect, or incomplete discovery. Under such a scenario, a plaintiff may suffer grave injustice in terms of undercompensation for an injury. Similarly, an inequitable result may obtain, when, through no fault of any party, new, undiscovered evidence appears at trial which would entitle the plaintiff to greater compensation than that for which she initially prayed. Under either situation, strict application of the Civ. R. 54(C) time constraints would unjustly limit the plaintiff to the prayer which was in effect seven days prior to trial.

In this cause, there appears to be such a predicament. Appellee repeatedly filed discovery requests which appellant ignored. The court on November 16, 1988, ordered appellant to comply. Appellee, believing appellant had complied with the discovery request moved to dismiss her motion for sanctions. Apparently, appellee's counsel was incorrect in his assumption because he again requested information concerning the same home buyers. Appellee's counsel then hand delivered the original "Request for Admissions and Interrogatories," which were initially filed on April 14, 1988, to appellant's counsel on January 12, 1989. Appellant filed the answers on January 20, 1989, three days before trial. However, at trial one witness indicated that the document, which appellant had provided to appellee, was $16,000 below the actual contract price of the transaction which the witness had entered into with appellant. (Parenthetically, it should be noted that appellee felt that she was owed approximately $50,000 but did not have proof to support her allegation absent the discovery request. In addition, immediately before the trial, appellee did not request either that a continuance be granted or that sanctions be imposed against appellant for his failure to comply with the discovery request.)

While this court is aware of existing case law which has strictly applied the Civ. R. 54(C) edict limiting the award to the amount prayed for seven days prior to trial, the facts in this case present a compelling reason to establish an exception to the limitation. as noted, appellee, for approximately one year, failed to comply with the discovery request, even when ordered by court. Moreover, when it provided the requested materials, a mere three days before trial, the information, as learned during examination of a witness, proved to be incorrect.

With this predicate before the court, it appears the conflicting principles which emanate as a result of Civ. R. 54(C) should be equitably resolved in appellee's favor. Appellant was provided with notice of its potential exposure almost one year prior to the trial. It knew the transactions for which appellee was seeking compensation. Under such a scenario, no prejudice to the defendant is obtained. The items which provide the basis to amend the prayer are within the defendant's knowledge. As such, it would be aware of the potential exposure, and it could not claim prejudice. furthermore, had appellant timely and accurately complied with the discovery request, appellee could have amended her prayer to reflect the evidence. Clearly, appellant should not be rewarded for its actions or inactions of refusing to comply with discovery and then providing incorrect information.

Equity and justice dictate a common sense result. Appellee, by appellant's actions, was denied the opportunity to timely amend her prayer. Through no fault of her own, she was not afforded the ability to determine the exact amount of her damages until after the evidence was presented at trial. In light of the facts in this cause, to preclude her from recovering fully that to which she is entitled simply because of a procedural rule of due process, solely based upon a statutory deadline, would be unconscionable. In addition, such a result would act to defeat the entire purpose of discovery, and would encourage such tactics as employed by appellant in this cause. We hold, when the defendant fails to provide complete, accurate discovery in a timely fashion to permit an amendment to the prayer pursuant to Civ. R. 54(C); or when through no fault of the parties, new evidence of damages, which due diligence could not have been discovered, is uncovered during the proceedings, the trial court, exercising sound discretion, may permit the plaintiff at trial to amend the prayer

to conform to the evidence. Therefore, given the facts in this case, we find that the court did not abuse its discretion in permitting appellee to amend her prayer.[2]

Appellee also alleges two additional theories to escape application of 54(C). First she alleges that *Moore* v. *Sweda* (1985), 27 Ohio App. 3d 38, creates an exception for actions in contract. This a strained interpretation of *Moore, supra* in which the court held 54(C) did not apply because the action was not solely for a monetary award, but rather was for an accounting and dissolution of a partnership.

While appellee alleges that this is an "accounting" action, it is simply a breach of contract suit. It was brought to determine from which transactions, if any, appellee was entitled to receive compensation pursuant to an oral contract. The award of compensatory damages was based upon a simple mathematical formula. The substance of this action does not require the transformation of this contract suit for money only into an accounting action to remove it from the Civ. R. 54(C) limitation. See, *e.g.*, 1 Ohio Jurisprudence 3d (1977), 199, Accounts and Accounting Section 36.

Second, appellee alleges that this action is for *quantum meruit*, and therefore is exempt from the Civ. R. 54(C) requirements for amendments by the nature of the action. This argument was rejected in *Aultman Hosp. Assn.* v. *Community Mut. Ins. Co.* (1989), 46 Ohio St. 3d 51, at 55, where the court noted:

"*Quantum meruit* is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered. * * * The contract here describes the nature of services to be rendered and the compensation to be paid. The record does not reveal that Blue Cross received unjust enrichment outside the parameters of the express contract. In the absence of fraud, illegality or bad faith, the hospitals are entitled to compensation only in accordance with the terms of the written agreement." (Citations omitted.)

Similarly, in this cause, the contract specified the services to be rendered in exchange for compensation based upon a percentage of the selling price. This is sufficient to remove the action from the area of *quantum meruit*. To adopt appellee's position, would, in essence, turn the courtroom into a forum for discovery to determine the services performed and the amount of compensation due under an agreement. This is not the function of the trier of fact.

In conclusion, the first and second assignments are without merit, but appellant's fifth assignment is with merit to the extent the award of $51,158.16 should be reduced to $47,800 which was the amount prayed for in the amendment made at trial.

In the third assignment, appellant argues that the court erred because appellee's actions were prohibited by law, and as such, no cause of action arises.

Appellee's real estate broker's license was deposited with the Ohio Division of Real Estate, but she maintained her real estate salesman's license. However, if appellee was a "regular employee," she would be entitled to compensation. This issue was one for the jury to determine, to-wit: whether her actions were sufficient to make her a regular employee of appellant's.

"It is universally accepted that the jury, or the trial court where there is no jury, is the sole judge of the credibility of witnesses and of what weight is to be given their testimony." *In re Lieberman* (1955), 163 Ohio St. 35, 38.

There is sufficient evidence in the record to support such a conclusion. This court cannot reverse on this issue.

This assignment is without merit.

In the fourth assignment, appellant argues evidence of eight sales transactions should be excluded because appellee was not responsible for the sale or because the transactions were canceled. Such argumentation is a manifest weight question rather than an admissions question. Appellant posits no legal theory upon which this assignment may be analyzed. As such, it is without merit.

*Judgment affirmed as modified.*

CHRISTLEY, P.J., dissents with dissenting opinion.
MAHONEY, J., concurs.

CHRISTLEY, P.J., dissenting.

I respectfully and regretfully dissent to the majority decision although agree 100% with their assessment of Civ. R. 54(C). Ohio's continued adherence to this aberration from the Federal Rules continues to defy logic and common sense, legal or otherwise. Nevertheless, the rule is clear and unequivocal in its scope and intent.

Much as I would like to carve out an exception, especially in this instance, I do not feel that we have latitude to do so.

Therefore, I would reverse based on the first assignment.

---

[1] It should be noted that the appellant in this appeal is Andrews Custom Builders. Inc., but the judgment entry awarded damages against Scott M. Andrews, Inc. Furthermore, the verdict from the jury identifies Andrews Custom Builders, Inc. as the non-prevailing party. Nothing in the record indicates the relationship of the two entities. However the parties, in their pleadings, interchange the two names freely. Additionally, appellee did not raise this concern with the trial court or with this court in her appellate brief, but only first made mention of the irregularity during her summation at oral argument. Appellant's counsel, then on rebuttal, indicated that both were the same entity. Appellee's concession throughout the lower proceeding, as well as appellant's, will be considered a waiver of any objection to this defect. As such, this court will treat references to the appellant or "Andrews" as the same entity.

[2] This result is also mandated as opposed to four other possible alternatives. Though not argued by either party, we do recognized that appellee, pursuant to the Civil Rules, may have requested a continuance, sought a mistrial, moved to vacate or for a new trial, or filed for sanctions for failing to comply with discovery. In addition to not being expressly identified as an alternative, we find that each of these options are not acceptable.

Requesting a continuance prior to trial, but within the seven day time frame, solely to permit an amendment to the prayer, while a potential solution, is pointless, as requiring form over substance. A final hour continuance may be impractical or unfeasible for the court, the jury, witnesses or the parties. Further, once the trial has begun, this option is foreclosed.

A mistrial or new trial would only serve to defeat the principles embodied in the concept of judicial economy. The plaintiff would be forced to wait for just compensation in addition to being subjected to the extra expense inherent in the delay or new trial. The entire trial process would have to begin anew. Further, such positioning would reward incomplete, inaccurate or fraudulent discovery rather than encourage the full and complete exchange of information.

Similarly, requesting sanctions likewise is not a viable alternative. Initially, it may not fully compensate the plaintiff. Furthermore, there may be no basis for sanctions as the evidence may not have been discoverable until the witness testified. As such, no misconduct would obtain, and sanctions would be inappropriate.