BIGGINS et al., Appellees and Cross–Appellants,

v.

GARVEY et al., Appellants and Cross–Appellees.

[Cite as *Biggins v. Garvey* (1993), 90 Ohio App.3d 584.]

Court of Appeals of Ohio,
Trumbull County.

Nos. 91–T–4628, 91–T–4630, 92–T–4649.

Decided Sept. 30, 1993.

586

*William N. Letson,* for appellees.

*Charles L. Richards*, for appellants.

CHRISTLEY, Judge.

This is an appeal and a cross-appeal from a judgment rendered in a derivative shareholder action, an equitable proceeding.

Appellees and cross-appellants, Francis Biggins and his wife Margaret G. Biggins ("appellees"), filed a shareholders' derivative action against the majority shareholders of the Trumbull Bronze Company ("Trumbull Bronze") in December 1989. The named defendants in this action were J.L. Garvey, his wife Bernadette G. Garvey, and Trumbull Bronze. Defendants J.L. and Bernadette G. Garvey are now the appellants and cross-appellees in this case ("appellants"). Trumbull Bronze was represented by counsel at trial, but has not been active in this appeal.

Trumbull Bronze was founded in 1918 by M.A. Garvey, father to appellee Margaret Biggins and appellant J. Lee Garvey. M.A. Garvey was president from 1918 to 1963, at which time appellant J.L. Garvey succeeded as president. When M.A. Garvey died in 1973, appellants became the owners of one thousand sixty-two shares of stock. The remaining five hundred forty-eight shares were held by M.A. Garvey's brother, Hugh J. Garvey.

When Hugh Garvey died, he willed his stock to his own children and their respective spouses. However, these adult children decided not to accept their inheritance of this stock, so it was directly transferred from the name of Hugh Garvey to appellees. In January 1986, a single stock certificate was issued to appellees. At the time appellees became stockholders, the company was doing poorly, as it had been working at a loss since 1979.

Appellant J.L. Garvey also became the principal owner of two other corporations. In 1973, he purchased Gillen Trucking Company, and, in 1979 he purchased Ford Machine & Welding Company, a machine shop which later became known as Garvey Corporation.

Gillen Trucking Company's only asset was a truck with which it did business with Trumbull Bronze. Garvey Corporation supplied Trumbull Bronze through the years with the vast majority of its castings.

In 1985, appellant J.L. Garvey retired from Trumbull Bronze. His son, Michael S. Garvey, succeeded him as the general manager of the company.

From 1985 to 1988, Michael S. Garvey also managed both Trumbull Bronze and Garvey Corporation, but he received compensation only from Trumbull Bronze. Both Garvey Corporation and Gillen Trucking used Trumbull Bronze facilities and personnel without charge.

On May 6, 1987, Trumbull Bronze was struck by fire. The company's entire manufacturing operations were burned to the ground. The office building was unharmed by the fire. No manufacturing operations have occurred there since May 6, 1987.

At the time of the fire, the company was in debt to Second National Bank for $281,000. That loan had been personally guaranteed by appellant J.L. Garvey. Although most of this loan had been charged off on the bank's books, it was still a valid obligation of the company and appellant J.L. Garvey.

At the time of the fire, Trumbull Bronze was insured with Cincinnati Insurance Company, which settled the claim for $531,224 in August 1987.

On September 17, 1987, a shareholders' meeting was held. The shareholders were unable to reach an agreement on the distribution of the fire insurance proceeds; thus, no formal action was taken at that meeting or subsequently. Nevertheless, appellants proceeded to disburse the fire insurance proceeds.

Eventually, in November 1988, appellees filed a shareholders' derivative action seeking relief under Civ.R. 23.1. This first complaint was shortly thereafter dismissed. Another complaint was filed on December 12, 1989, formally commencing this action.

Appellants filed an answer and requested a jury trial. In August 1990, appellees amended their complaint. Finally, in October 1990, appellees filed another complaint labeled "Supplemental Complaint." It was on this complaint that the case was tried in February 1991. A jury was selected, but before opening statement, appellants withdrew their motion for a jury trial. The case proceeded as a bench trial.

The trial commenced on February 20, 1991, and the court heard evidence through February 25, 1991. For various reasons, the trial did not begin again until July 8, 1991.

The trial court issued its judgment entry on September 11, 1991. The trial court ordered a number of things in its eighteen-page judgment entry: (a) it ordered appellants to pay Trumbull Bronze $292,688.78; (b) it canceled the loans Trumbull Bronze owed J.L. Garvey; (c) it canceled the deferred compensation to J.L. Garvey and Michael S. Garvey; (d) it ordered the payment on a 1959 promissory note executed by J.L. Garvey in favor of Trumbull Bronze; (e) it ordered an accounting of the Second National Bank Transaction; (f) it ordered the liquidation of Trumbull Bronze; (g) it ordered appellants to pay rent and expenses for use of the facilities by Gillen Trucking and Garvey Corporation; and (h) it ordered the appointment of a receiver to manage the affairs of Trumbull Bronze.

Apparently, all parties believed that the September 11, 1991 judgment entry left several matters unadjudicated, since both parties filed motions for clarifications.

Appellees also filed a motion for attorney fees. A hearing was held on that matter on November 15, 1991.

The trial court issued what it called a "post-judgment entry" on November 20, 1991, disposing of the motion for attorney fees and the remaining issues.

Appellees filed a motion for reconsideration and a motion for findings of fact regarding the court's judgment on attorney fees. These motions were overruled on November 22, 1991.

On November 25, 1991, appellees filed their notice of appeal.

On December 20, 1991, the trial court overruled appellants' motion to strike a judgment lien. On January 14, 1992, appellants filed their notice of appeal.[1]

On appeal, this case has also had some further activity. The Bigginses filed a motion to dismiss appellants' appeal in that the appeal was untimely. This court overruled their motion, determining that there had not been compliance with Civ.R. 58(B), and appellants' time for appeal did not begin to run until the date shown on the docket as the date the notice of the final order was mailed, December 17, 1991.

Both parties have filed a number of assignments of error. In conjunction with their January 14, 1992 notice of appeal, appellants have assigned the following as error:

"1. The trial court erred in overruling defendants' motion to strike plaintiffs' prayer for money judgment and in then awarding plaintiffs' judgment against defendants for more than $292,000, when plaintiffs never made a demand for money judgment in a dollar amount as required by Civ.R. 54(C).

"2. The trial court erred in ordering defendants to pay The Trumbull Bronze Company $138,024.78 because of defendants' distribution of the fire insurance proceeds.

"3. The trial court erred in ordering defendants to pay The Trumbull Bronze Company $154,000 because of defendants' failure to liquidate the corporation and their continued operation of The Trumbull Bronze Company.

---

1. By virtue of the timing of the respective notices of appeal in this case, the appellants/cross-appellees should technically be the appellees/cross-appellants, and vice versa. However, for purposes of internal clarity stemming from the parties' designations and briefing, we will maintain the parties' characterizations they have ascribed.

"4. The trial court erred in canceling The Trumbull Bronze Company's indebtedness to J. Lee Garvey for advances to the corporation, deferred compensation and interest on those advances and deferrals.

"5. The trial court erred in ordering defendants Garvey to pay forthwith to The Trumbull Bronze Company the balance due on the 1959 promissory note executed by defendants Garvey in favor of The Trumbull Bronze Company.

"6. The trial court erred in ordering defendants Garvey to pay rent to The Trumbull Bronze Company because of the use of The Trumbull Bronze Company facilities by Gillen Corporation and by Garvey Corporation and in ordering that the amount of rent paid is to be determined by a 'receiver.'

"7. The trial court erred in ordering an accounting with respect to the payment of the Second National Bank loans to the Trumbull Bronze Company and J. Lee Garvey.

"8. The trial court erred in granting plaintiffs' counsel an award of attorney fees and expenses.

"9. The judgment against defendant Bernadette G. Garvey is against the manifest weight of the evidence."

In conjunction with their November 25, 1992 notice of appeal, appellees have advanced the following assignments of error:

"1. The Post–Judgment Entry of the court awarding plaintiffs fees and expenses is inadequate and against the manifest weight of the evidence, and the court further erred in denying plaintiffs' motion for reconsideration thereof.

"2. The court erred in refusing to state in writing its findings of fact separately from its conclusions of law on the issue of fees and expenses.

"3. The court erred in failing to grant judgment against defendants Garvey for the difference between the market rate of interest on the loan of Trumbull Bronze Company to defendants and the below market rate of interest which they charged themselves.

"4. The court erred in not requiring defendants to account for and pay over to Trumbull Bronze income made by Garvey Corporation and Gillen Trucking, Inc. in the years in which those corporations made a profit.

"5. The court erred in ruling that the appropriate statute of limitations in this action was the four-year statute provided in Revised Code 2305.09.

"6. The court erred in failing to grant prejudgment interest against defendants Garvey.

"7. The court erred in failing to require defendants Garvey to account for the additional tax caused to Trumbull Bronze in the amount of $1,787.50 by virtue of

improperly recording payments of compensation to J.L. Garvey and M.S. Garvey."

■ In the first assignment of error, appellants contend that the trial court erred in overruling appellants' motion to strike appellees' prayer for money judgment and then awarding appellees' judgment against appellants for more than $292,000 when appellees never made a demand for money judgment in a dollar amount as required by Civ.R. 54(C). Specifically, appellants assert that a shareholder in a derivative action may not be awarded a money judgment in an amount which exceeds the dollar amount prayed for in a complaint.

A review of the record shows that appellees filed three complaints. The controlling complaint, filed on October 26, 1990, was labeled "Supplemental Complaint." The only specific money damages request was on the $20,000 promissory note. In that complaint and prayer for relief, appellees requested various accountings, attorneys fees, an order liquidating the company, as well as the expenses incurred in the accountings.

Civ.R. 54(C) states that "a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand * * *." As a general rule, a damage award may not exceed the prayer for relief. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 28, 20 OBR 213, 214, 485 N.E.2d 704, 705.

As to the effect of R.C. 2309.01,[2] the Ohio Supreme Court has recently ruled that statute to be invalid because of its inherent conflict with Civ.R. 8(A). *Rockey v. 84 Lumber Co.* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789. In that case, the plaintiff did not request a specific monetary amount in her original complaint. Three days prior to trial, she sought a leave to amend, which was not granted. The trial judge, subsequent to the jury verdict of $60,000, reduced the verdict to $25,000 per his interpretation that R.C. 2309.01(D) restricted her maximum recovery to that amount.

*Rockey* is directly on point as it does address both Civ.R. 54(C) and R.C. 2309.01(D), which provided for the amendment of the demand to be made at least seven days prior to trial.

"With the enactment of R.C. 2309.01, plaintiff is required to amend the complaint in order to state an actionable cause and comply with Civ.R. 8(A). This additional requirement has led to harsh results in that plaintiffs who specify no actual damages in the original complaint, in an attempt to comply with R.C. 2309.01, face a judgment for zero damages when they do not later comply with the R.C. 2309.01 requirement that they *amend the complaint*. Regardless of whether these situations are framed as failure to comply with *Civ.R. 54(C)* or as

---

2. Tort damages over $25,000 were not to be specifically demanded in the complaint.

noncompliance with *R.C. 2309.01(D)*, they are all glaring examples of the inherent unfairness which results from the R.C. 2309.01 requirement that plaintiff specify no damages in the original complaint when those damages are in excess of twenty-five thousand dollars." (Emphasis added.) *Rockey,* 66 Ohio St.3d at 224, 611 N.E.2d at 791.

The two companion cases decided in the trilogy of *Rockey* also reference Civ.R. 54(C). *Walsh v. Jagadeesan* (1993), 66 Ohio St.3d 221, 611 N.E.2d 789; *Copes v. Good Samaritan Hosp.* (1993), 63 Ohio St.3d 1431, 588 N.E.2d 131.

In those two companion cases, the plaintiffs also failed to amend in a timely fashion pursuant to either Civ.R. 54(C) or R.C. 2309.01(D). In *Walsh,* following a three-day trial, but before the jury retired to deliberate, the trial court denied a motion by the defendant to instruct the jury that no damages could be rendered because of plaintiff's failure to assert a specific amount of damages.

In *Copes,* the plaintiffs also did not specify or amend to a specific amount of damages. After the jury was empaneled, the defendants raised a motion *in limine* to preclude the plaintiffs from offering any evidence of damages on the grounds that plaintiffs failed to amend under Civ.R. 54(C). Plaintiffs moved to dismiss without prejudice and the trial court granted that motion, with the court of appeals affirming. The Supreme Court affirmed both decisions.

We believe the message is clear that the principle of *Rockey* is applicable to situations involving Civ.R. 54(C) as well as to those situations involving Civ.R. 8(A). Thus, even if it were determined that this was not an equitable action but rather one in damages, the appellees were not required to amend as they had never pled a specific amount of damages in the first place in reference to the primary thrust of the complaint.[3] If they had pled a specific amount for their general prayer of relief and wished to increase it prior to trial, then they would have been required to amend it timely under Civ.R. 54(C), *Rockey* not being applicable in that situation.

The courts have recognized additional situations where they have not held parties to their prayer for relief. *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 17 OBR 432, 478 N.E.2d 1000 (Civ.R. 54[C] did not apply to an arbitration award under the uninsured motorist clause). *McLaughlin v. McLaughlin* (1986), 30 Ohio App.3d 242, 30 OBR 401, 507 N.E.2d 423 (where a husband files for divorce and the wife files a general answer with no request for alimony, the court may divide the property between the parties without violating the demand for relief provisions of Civ.R. 54[C] ).

---

3. As previously mentioned, the only specific prayer for money damages was on the $20,000 promissory note referenced in count six, paragraph 20. The balance of the complaint prayed for various accountings, attorney fees, an order of liquidation and the expenses therefor.

This court has also found exceptions to the provisions of Civ.R. 54(C). In *Smolik v. Andrews Custom Bldrs., Inc.* (1990), 62 Ohio App.3d 872, 577 N.E.2d 726, we held that where a defendant failed to provide complete, accurate discovery in a timely fashion, the trial court, exercising its discretion, may permit a plaintiff at trial to amend the prayer for relief to conform to the evidence.

In a case more directly on point, the Medina Court of Appeals held that:

"An action for an accounting seeks a determination by a court of what may be due the respective parties as a result of the relationship between them. See, generally, 13 Ohio Jurisprudence 3d (1979) 155, Business Relationships, Section 1015. This accounting would explore all rights under terms of the partnership agreement, not just monetary rights, but clearly the ascertainment of monies due is an essential part of the process. Moore's complaint then asked for more than $20,000 and the trial court did not err in exceeding that amount." *Moore v. Sweda* (1985), 27 Ohio App.3d 38, 39, 27 OBR 40, 41, 499 N.E.2d 371, 373.

The Cuyahoga County Court of Appeals found similarly in a shareholder's derivative suit. *Consolo v. King Distrib. Co.* (Aug. 31, 1978), Cuyahoga App. No. 37407, unreported. In that case, the appellant raised the issue that the trial court erred in awarding a money judgment for compensatory damages where the complaint failed to demand a specific amount of money for such damages. The court concluded that an accounting would be an incomplete remedy if a court granting it could not take the next obvious step and order the relief that the accounting dictated. That meant the trial court, for the purposes of affording full and complete relief, could adjust all of the differences between the parties. See, also, *Weinberger v. Weinberger* (1974), 43 Ohio App.2d 129, 132, 72 O.O.2d 325, 326, 334 N.E.2d 514, 516.

The fact that the court had, earlier in the instant action, treated the proceedings as an action for damages is irrelevant. The courts would be in a dreadful predicament if trial judges were not allowed to timely correct interlocutory missteps.

In the present case, appellees had asked for various accountings in their complaint. The trial court in its judgment entry addressed appellants' Civ.R. 54 concerns and determined that this was an action in equity. As such, the court had the jurisdiction to make the appellants liable to the corporation, an equitable action not being subject to Civ.R. 54(C).

Therefore, for the further reason that this was an equitable action for an accounting, the trial court did not err in awarding damages despite appellees' failure to request a specific amount in their prayer for relief. The first assignment of error is without merit.

In the second assignment of error, appellants contend that the trial court erred in ordering appellants to pay Trumbull Bronze $138,024.78 resulting from appellants' improper distributions of the fire insurance proceeds.

At the outset, we note that this assignment is primarily a credibility issue. Appellants contend that the trial court's findings are against the manifest weight of the evidence. *State ex rel. Celebrezze v. Environmental Ent., Inc.* (1990), 53 Ohio St.3d 147, 153–154, 559 N.E.2d 1335, 1341–1342, states:

"A fundamental tenet of appellate review is that a trial court's findings will not be reversed if there is competent, credible, evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. 'The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. * * * [Citations omitted.] Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. * * * ' " *Id.* (Alice Robie Resnick, J., concurring), quoting *Kinney v. Mathias* (1984), 10 Ohio St.3d 72, 73, 10 OBR 361, 362, 461 N.E.2d 901, 902.

Appellants question several of the trial court's findings regarding the wrongful payment of the fire proceeds. Using the standard set forth above, we will review each of appellants' questions.

First, appellants question the trial court's determination that appellants were responsible for $26,062.10 of the trade accounts payable.

Appellees' expert, a CPA, testified that when he examined the company's accounts payable ledger, $26,062.10 in trade accounts payable was unaccounted for. He further testified that he was not comfortable with the entire $155,190.71 which appellants claimed went to trade accounts payable because, of that amount, he could not trace $26,062.

Since there was competent, credible evidence to support the trial court's finding that $26,062.10 was unaccounted for, this argument has no merit.

Second, appellants contend that they should not be responsible for $25,000 paid to appellants' son, Michael S. Garvey, for claimed compensation for 1987.

Tracking Michael S. Garvey's salary is a convoluted task. The actual payment of this $25,000 was included as part of the $67,000 paid to his *father*, appellant J.L. Garvey.

Appellants' version of how appellant J.L. Garvey ended up with Michael S. Garvey's salary for 1987 was apparently too much for the trial court to swallow. Supposedly, Michael S. Garvey purchased $25,000 of Garvey Corporation stock from his father, and then paid $25,000 of Garvey Corporation's debt instead of

paying his father. Even if Michael S. Garvey's testimony was believed, his salary, after withholdings, would have amounted to much less than $25,000.

A review of the record indicates that the board of directors of Trumbull Bronze never authorized the hiring of or payment to Michael S. Garvey. He admitted on cross-examination that the company could not afford to pay him when he was hired in 1985.

Furthermore, Garvey Corporation's tax return and its accountant's testimony indicated that Michael S. Garvey did not receive shares until 1988.

In its judgment entry, the court justifiably indicated that it had some question in its mind regarding the credibility of some of the documents of Garvey Corporation.

Thus, there was substantial evidence to support the trial court's finding that appellants should be responsible for the $25,000 representing Michael S. Garvey's 1987 compensation.

■ Third, appellants contest the trial court's finding which made them responsible for the repayment of J.L. Garvey's loans and advances.

Appellants contend that the evidence showed that J.L. Garvey loaned and advanced to the Trumbull Bronze at least $42,151.20 ($37,430.44, $2,410.45, and $2,310.31).

The trial court found that "they were not properly documented and in view of the self-dealing that has occurred here, the Court rejects their existence."

It is true that an officer may make a legitimate loan to a corporation. *Flynn v. Eng. Radio Co.* (1924), 19 Ohio App. 495. R.C. 1701.60 permits such transactions between a corporation and one or more of its directors, but requires the transaction to be approved by a majority of the disinterested directors in order to be fair to the corporation. In the present case, there is no evidence that appellees knew of the purported loans, let alone approved them. Further, appellants failed to show sufficient documentation for these loans, nor did they demonstrate their fairness to the corporation. Per *Flynn*, there must be knowledge and approval by the board of directors. The corporate minutes reflected no such knowledge or approval.

Appellees' CPA expert noted that the adjusting entries, in and of themselves, were unusual. There was no testimony as to why these loans were made.

Thus, because the loans were not valid, the interest on them was not valid either.

Based on the evidence, or lack thereof, the trial court did not err in charging appellants with the bogus loans.

■ Appellants also raise the issues of appellant J.L. Garvey's deferred compensation and the interest thereon.

Appellants contend that at least $135,516 in compensation had been deferred over the years. The trial court found that the accrued wages were not regularly posted or approved in the corporate minutes. The court further stated it rejected an attempt to legitimatize the lapsed claim by filing a self-serving document with the income tax returns *after* the fire. A review of the record indicates that there was only one prior entry in the corporate minutes showing deferred compensation, a $6,000 entry in 1981 which was dropped in later years. Finally, J.L. Garvey did not list the company as a debtor in his own listing of personal assets, and the company accountant did not show such a liability in his records.

This deferral coincidentally only arose after the fire proceeds appeared.

■ In *Apicella v. PAF Corp.* (1984), 17 Ohio App.3d 245, 17 OBR 512, 479 N.E.2d 315, the appellate court held that directors have a duty to act in the best interest of the corporation. Part of that duty includes an obligation to review the corporation's internal and external affairs.

In light of the company's dismal financial status, the directors in the present case were obligated to review appellant J.L. Garvey's salary. The trial court found that when the corporation was losing large sums of money, the salary increases claimed by appellant J.L. Garvey at the same time were unreasonable and thus the court disallowed them.

The burden is on the director employee to justify his salary and to show the reasonableness thereof. *Soulas v. Troy Donut Univ., Inc.* (1983), 9 Ohio App.3d 339, 341, 9 OBR 607, 609, 460 N.E.2d 310, 312. Appellants have not met this burden, and given the evidence, the trial court did not err in finding that the deferred compensation was not an approved or legitimate expenditure of the company. Therefore, there was no accrual of interest.

Appellants' second assignment is without merit.

In the third assignment of error, appellants assert that the trial court erred in ordering appellants to discontinue their operation of Trumbull Bronze and to liquidate the corporation.

The trial court held appellants liable for those subsequent losses because they failed to act in the best interest of the company and its minority shareholders.

The trial court found that the liquidation and sale of corporate assets should have been instituted long before the fire in 1987. The failure to do so ultimately resulted in the improper distribution of the fire insurance proceeds by the

unilateral action of appellants. The trial court found this act to be ultra vires and made appellants liable.

"It is well accepted law that directors of a corporation occupy a fiduciary relationship to the corporation and its shareholders and are held strictly accountable and liable if the corporate funds or property are wasted or mismanaged due to their inattention to the duties of their trust. When a director breaches his duty of trust and benefits at the expense of the corporation then under Ohio law the director is liable for any profits he receives. It matters not that the director acted absent actual fraudulent intent; as long as the director places himself in a position of conflicting loyalties and subsequently violates his primary obligation to the corporation, liability attaches." *Ohio Drill & Tool v. Johnson* (C.A. 6, 1980), 625 F.2d 738, 742.

The Supreme Court of Ohio has also held that the majority shareholders of a corporation have a fiduciary duty to the minority shareholders. *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 108, 548 N.E.2d 217, 220.

Since none of these acts was voted upon or reflected in the corporate minutes, appellants must take personal responsibility for them. Appellants as fiduciaries breached their trust, and therefore were liable for the losses.

The third assignment is without merit.

In the fourth assignment, appellants contend that the trial court erred in canceling Trumbull Bronze's indebtedness to J.L. Garvey for advances to the corporation, deferred compensation and interest on those advances and deferrals.

Since we addressed this fully in the second assignment, we will not address it again here in the fourth assignment. The only new argument made in this assignment was whether appellees have standing to raise the issue of the deferred compensation for the years prior to their acquisition of stock in 1986.

First, this court would need to accept the argument that the deferred compensation showed on the corporate books prior to 1986. There is no evidence to support this conclusion. In addition, no such money was actually paid out until 1987.

The actual transaction which appellees are complaining about is the pay out to J.L. Garvey. That occurred beginning in 1987 after they were shareholders.[4] Therefore under Civ.R. 23.1 appellees have standing.

This assignment is without merit.

---

4. Further, the question of whether the trial court properly found that appellees received their stock by operation of law finds some support in the record, *i.e.*, the stock passed directly from Hugh Garvey to appellees when Hugh Garvey's children refused this inheritance.

■ In the fifth assignment of error, appellants argue that the trial court erred in ordering them to pay to the company the balance due on the 1959 promissory note executed by appellants.

In 1959, appellants executed a note for the principal amount of $20,000 at three percent interest.   At the time of trial, appellants still owed $11,347.55 of the principal.   The note bears no due date.

Specifically, the trial court found:

"12.) The balance due on the promissory note is ordered by the Court to be paid forthwith to the Company.   The lapse of 32 years from the date of execution of the note is unreasonable.   However, the court finds that the instruments * * * (mortgage and note), though poorly drawn, are valid as between [appellant J.L. Garvey] and the Trumbull Bronze Company.   [Exhibits provided by appellants] provided that the loan was to be repaid in monthly or quarterly installments. Due date is long past."

Moreover, the evidence supports the conclusion that appellants once again breached their fiduciary duty.   As fiduciaries, they had the duty to collect this note, particularly when the corporation began to show signs of actual financial distress.

The trial court did not err in continuing appellants' responsibility for the note. The fifth assignment is without merit.

■ Appellants' sixth assignment of error states that the trial court erred in ordering appellants to repay rent to Trumbull Bronze for the use of its facilities by Gillen Corporation and Garvey Corporation.   Appellants also complain that the amount of rent should not be determined by a receiver.

The trial court considered this matter in its September 11, 1991 judgment entry.   The trial court found suspect the rent-free use of the facilities of Trumbull Bronze by Gillen Trucking and Garvey Corporation (both owned by J.L. Garvey).

The trial court concluded that the continued operation of Trumbull Bronze "was for the advantage and benefit of the [appellant] J.L. Garvey, and his other interests (the Garvey Corporation and Gillen Trucking)."

The trial court found that between these interests, there was considerable self-dealing and a breach of fiduciary duties.

In *Estate of Schroer v. Stanco Supply, Inc.* (1984), 19 Ohio App.3d 34, 36, 19 OBR 100, 102, 482 N.E.2d 975, 976, the court characterized a close corporation as one with a relatively small number of shareholders, one whose shares are not traded on a national securities exchange and are only rarely bought and sold, and one characterized by an identity of management and ownership.   The court found

that such a corporation more closely resembles a partnership, and it is "peculiarly susceptible to a particular form of misuse or abuse by the majority or controlling shareholders." *Id.* at 38, 19 OBR at 104, 482 N.E.2d at 979. This abuse results from the "manipulative use of corporate control" to, among other things, reduce the minority shareholders' "percentage of ownership of assets, or otherwise unfairly deprive them of advantages or opportunities to which they are entitled." *Id.* The court went on to cite Justice Powell's majority opinion in *United States v. Byrum* (1972), 408 U.S. 125, 137, 92 S.Ct. 2382, 2390, 33 L.Ed.2d 238, 247: "A majority shareholder has a fiduciary duty not to misuse his power by promoting his personal interests at the expense of corporate interests."

Trumbull Bronze clearly fits the description of a close corporation, and appellants, as majority shareholders, manipulatively exercised corporate control at the expense of corporate or minority interests.

In light of the overwhelming evidence, the trial court did not err in concluding that the receiver should determine a reasonable amount owed by Garvey Corporation and Gillen Trucking for rent and expenses.

The sixth assignment is without merit.

In the seventh assignment of error, appellants allege the trial court erred in ordering a further accounting with respect to the payment of the Second National Bank Loans to Trumbull Bronze and J.L. Garvey.

The facts concerning this transaction are basically as follows. Appellant J.L. Garvey negotiated a joint settlement for his own personal loan and one owed by Trumbull Bronze. The company owed the bank approximately $281,000. Appellant J.L. Garvey personally owed an additional $266,000. All of these loans were delinquent and substantial portions had already been charged off by the bank. Appellant J.L. Garvey negotiated a combination deal which reduced both his own and the corporation's obligation.

As a result of this renegotiation, apparently Second National Bank forgave $37,430.44 of the amount owed by Trumbull Bronze and appellant J.L. Garvey was personally forgiven $28,483.05.

The trial court determined that there was self-dealing involved here and ordered an accounting procedure.

We do not find appellants' argument persuasive that the company benefitted from his negotiations. There was some evidence to indicate that the benefit to the company was illusory; that being the case, further inquiry through an accounting of this matter was justified.

Thus, the trial court did not err in ordering one.

In the eighth assignment of error, appellants contend that the trial court erred in granting attorney fees to appellees. Since two of appellees' cross-assignments of error address the issue of the attorney fees, we will address appellants' eighth assignment later in conjunction with the cross-assignments.

In appellants' ninth assignment of error, appellants contend that the trial court's judgment against appellant Bernadette Garvey is contrary to the manifest weight of the evidence.

Appellants argue that appellant Bernadette Garvey should not be held liable because she did not have anything to do with daily operations, she had no interest in Garvey Corporation, and she received no fire proceeds. Appellants cite no particular authority for their position.

In the recently decided case of *Geygan v. Queen City Grain Co.* (1991), 71 Ohio App.3d 185, 593 N.E.2d 328, a husband and wife were directors of the defendant corporation. The husband was held to have breached his fiduciary duties by speculating in grain. The court found that the wife had also breached her fiduciary duties to the corporation because she knew of her husband's activities, and acquiesced in these activities. The court held that as a director, she "was obligated to do more than perform household-type functions and attend meetings." *Id.* at 193, 593 N.E.2d at 332. "When a director has knowledge of a fellow director's improprieties and does not act upon the information, her decision to stand idly by is not a defense." *Id.*

The trial court had ample evidence from which to conclude that appellant Bernadette Garvey had knowledge of her husband's wrongful appropriation of the fire proceeds and self-dealing. In many instances, the two were the only directors present at board meetings which purported to authorize J.L. Garvey's dealings. Her decision to "stand idly by" was not a defense, as she had a duty to do more than passively acquiesce in her husband's or any other director's dealings. Indeed, she had a duty to fully participate in the directorship of Trumbull Bronze and to act in a manner that was in its best interests.

The mere fact that she did not directly receive any of the proceeds from the fire insurance does not exonerate her. As a corporate officer, she had a duty to ensure that the funds were distributed in the corporation's best interest. While the existence of a husband-wife relationship cannot be the sole connection, the trial court was not required to be blind to the fact that if J.L. Garvey profited, Bernadette did also, albeit indirectly.

Therefore, the trial court's judgment as it applies to appellant Bernadette Garvey is not against the manifest weight of the evidence.

The ninth assignment is without merit.

In review, appellants' assignments one through seven, and assignment nine are without merit.

We will now consider appellees' seven cross-assignments, and appellants' eighth assignment of error.

In the first cross-assignment, appellees contend that the trial court's post-judgment entry awarding fees and expenses to appellees is inadequate and against the manifest weight of the evidence. Along with this assignment, we will discuss appellants' eighth assignment of error which contends that the trial court erred in granting any attorney fees to appellees.

After the trial court entered its main judgment entry on September 11, 1991, appellees filed a motion for the allowance of attorney fees and expenses on October 15, 1991. Appellees requested $130,738.07 in attorney fees and $9,352.34 in expenses. Several other filings in regard to this motion were also filed.

A hearing on the motion for attorney fees was held on November 15, 1991. On November 20, 1991, the trial court issued what it called a "post-judgment entry," which dealt with several outstanding issues including attorney fees. The court's ruling allowed the attorney fees and expenses, but at a significantly lower amount than appellees requested: specifically, $50,000 for attorney fees and $6,678.30 in expenses ($2,188.25 for expenses of transcript and copies of deposition testimony, $4,350 for accountant fees plus $140.05 for photocopying charges).

The trial court noted in its postjudgment entry that it could appreciate the itemization of fees and expenses submitted by counsel, but felt it needed to make serious adjustments. In making its decision, the trial court considered that the case had been refiled and that there was duplication of some of the charges and pleadings.

Thereafter, appellees filed a motion for separate findings of fact and conclusions of law and a motion for reconsideration of the trial court's decision awarding attorney fees and expenses. Those motions were overruled by the trial court on November 22, 1991.

Attorney fees are recoverable in a successful shareholder's derivative action. *Apicella v. PAF Corp.*, 17 Ohio App.3d at 250, 17 OBR at 518, 479 N.E.2d at 320; *Truman v. Coghlin Mach. & Supply Co.* (1919), 11 Ohio App. 220, 225. The amount to be fixed as attorney fees is within the sound discretion of the trial court based on the evidence before it. A reviewing court will not reverse a trial court's determination absent a clear abuse of discretion. *Apicella; Ramey v. Cincinnati Enquirer, Inc.* (C.A. 6, 1974), 508 F.2d 1188, 1196.

The determination of whether the trial court's award was an abuse of discretion will resolve appellees' first cross-assignment and appellants' eighth assignment.

At this point, we would note that appellants in their brief in chief argue that the trial court *erred* in awarding attorney fees, but in their reply brief to the first cross-assignment they argue that "the trial court's award of attorney fees was contrary to the manifest weight of the evidence presented." We note that this is an overstatement of the actual standard, abuse of discretion.

Although appellees fervently argue that they arrived at their $130,738.07 fee by multiplying the hours expended by the billable rate, more than that is required to calculate an attorney fee award. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894. This court has embraced the factors set forth in *State ex rel. Montrie Nursing Home, Inc. v. Creasy* (1983), 5 Ohio St.3d 124, 5 OBR 258, 449 N.E.2d 763, when determining reasonable attorney fees:

"[The] factors include: ' * * * (1) the time and labor involved in maintaining this litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of this litigation.' " *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.* (1991), 74 Ohio App.3d 266, 286, 598 N.E.2d 1187, 1200.

Appellees had the burden of proof on the issues of attorney fees and expenses at trial, as well as the responsibility of demonstrating the error committed by the trial court on these questions. Evidence on these issues was very scanty. Absent a contradictory record, we presume the regularity of the trial court's action. Therefore, the eighth assignment and the first cross-assignment both have no merit because there is some evidence to support the court's finding.[5]

Appellees raised a related additional issue in their second cross-assignment of error: the trial court erred in failing to provide findings of fact on the issue of fees and expenses.

As previously stated, after the November 20, 1991 postjudgment entry was issued, appellees requested findings of fact regarding attorney fees and expenses. Appellees complain that the trial court erred in not following Civ.R. 52.

The trial court's entry explaining its award was sufficient, especially in light of the sparsity of the record on this issue. The second cross-assignment is without merit.

---

5. As we overrule appellants' eighth assignment of error, it is unnecessary for this court to consider appellees' motion to file a supplemental brief arguing that appellants had no standing to appeal the issue of attorney fees.

In the third cross-assignment of error, appellees contend that the trial court erred in not granting judgment against appellants for the difference between the market rate of interest on the loan from Trumbull Bronze and the amount appellants charged themselves.[6]

Appellees believe that when majority shareholders and directors borrow money from a corporation on a demand note, they should be required to account for and pay to the corporation not less than the market rates of interest prevailing at the time.

Here, appellees are asserting that the $20,000 loan appellants took from the company to build their home in 1959 at three percent interest with no due date was a breach of their fiduciary duty. Appellees believe that the failure to pay the principal and to pay the market rate are indications of self-dealing and conflicts of interests.

Appellees' argument is based on the fiduciary duty owed by the officers of a corporation. The directors have the burden of proof to show that a contract or transaction is fair to the corporation. *Apicella,* 17 Ohio App.3d at 248, 17 OBR at 515, 479 N.E.2d at 319.

The remedy for a breach of the fiduciary duty owed by a corporate officer is disgorgement of any profits received. *Scullen v. Mutal Drug Co.* (1941), 138 Ohio St. 132, 133, 20 O.O. 126, 127, 33 N.E.2d 992, 993. Once again, the trial court has broad discretion. The trial court found the note, though poorly drafted, to be valid. The trial court concluded that the lapse of thirty-two years from the day of execution of the note was unreasonable. Thus, the court ordered that the balance due be paid. The failure of the trial court to award a higher interest rate does not reach the heights of an abuse of discretion. Therefore, the third cross-assignment is without merit.

In the fourth cross-assignment of error, appellees argue that the court erred in not requiring appellants to account for and pay over to Trumbull Bronze income

---

6. Appellants contend that appellees are precluded from making this argument because their notice of appeal only stated that they were appealing from the postjudgment entries. First, in appellees' notice of appeal, they stated their *probable* issues for review. When the post-judgment motion or entry at issue is one which tolls the time for the filing of an appeal from the original judgment, such as a Civ.R. 59 motion for a new trial or a Civ.R. 52 motion for findings of fact, a party is not confined to these postjudgment issues, even when the original judgment was not specifically noted in a subsequent timely notice of appeal. When those postjudgment motions which do not toll the clock in terms of mounting an appeal are appealed, such as a Civ.R. 60(B) motion for relief from judgment, the litigant must be careful to file a notice of appeal as to the original judgment before the thirty days from the date of the original judgment if they also wish it to be considered. *Carrabine v. Brown* (Aug. 13, 1993), Geauga App. No. 92–G–1736, unreported, 1993 WL 318809.

made by Garvey Corporation and Gillen Trucking in the years those corporations made a profit.

The trial court did make some findings related to Garvey Corporation and Gillen Trucking. The trial court found that the purchase and sole ownership of Gillen Trucking and Garvey by J.L. Garvey was suspect, considering the losses suffered by Trumbull Bronze while these corporations were using Trumbull Bronze's facilities. This was particularly true in view of the fact that Garvey Corporation's sales in 1988 were approximately $451,000, in 1989, they were approximately $675,000, and in 1990, they were approximately $70,000.

The trial court found that the continued operation of Trumbull Bronze after the fire was for the advantage and benefit of J.L. Garvey, Garvey Corporation and Gillen Trucking.

The trial court also ordered the appointment of a receiver to determine a reasonable amount of rent and expenses to be paid by Garvey Corporation and Gillen Trucking.

The trial court did not see fit to order an accounting to determine what profits, if any, to which Trumbull Bronze was entitled.

■ Part of appellees' argument is that the acquisition of Garvey Corporation and Gillen Trucking should have been exercised by Trumbull Bronze, not J.L. Garvey. It is true that officers and directors of a corporation cannot appropriate the opportunity of financial or business gain for themselves as individuals if such opportunity was advantageous to their corporation, and if it was financially able to accept such opportunity and make the advantageous acquisition. Where such officers and directors are found to have appropriated a corporate opportunity to their own financial gain, they *may* be required to transfer the acquisition to the corporation and account to the corporation for their inequitable profits. *Hubbard v. Pape* (1964), 2 Ohio App.2d 326, 329, 31 O.O.2d 475, 476, 203 N.E.2d 365, 367.

■ In the present case, the trial court did not err in failing to award profit from Garvey Corporation and Gillen Trucking. This decision is not against the manifest weight of the evidence. It is clear from the trial court's entry that it did consider the relationships between Garvey Corporation and Gillen Trucking and Trumbull Bronze.

Noticeably lacking was clear evidence that Trumbull Bronze could have acquired the corporations themselves at that particular time.

In light of the record and the judgment entry in its entirety, the trial court did not err in failing to order an accounting to determine what income profits, if any, Trumbull Bronze deserved.

The fourth cross-assignment of error is without merit.

In the fifth cross-assignment of error, appellees contend that the court erred in ruling that the appropriate statute of limitations in this action was the four-year limitation provided in R.C. 2305.09. Rather they argue that in an equity proceeding the appropriate statute of limitations is ten years under R.C. 2305.14.

R.C. 2305.09 provides a four-year statute of limitations for certain torts. R.C. 2305.14 is more of a catchall. For actions not specified elsewhere in the chapter, a ten-year statute of limitations is provided. Generally, Ohio courts have indicated that R.C. 2305.14 applies to actions exclusively in equity. *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 29 O.O. 399, 58 N.E.2d 675.

The trial court held in its September 11, 1991 judgment entry that this action was "being treated fully by the Court as an equity action."

Prior to trial, the court determined that R.C. 2305.09 was the applicable statute of limitations. A review of the trial court's September 11, 1991 judgment entry indicates that the trial court may have reversed itself, applying the equitable standard. Specifically, the court stated:

"18. b) The Court rejects Defendants' argument that it cannot rule as to the legality of the payment of deferred compensation, wage accruals, interest, etc. since payment of these were not made until long after the date of limitation. Rather, this Court finds that the act of paying out the funds from the fire loss occurred within the Statute of Limitations and triggered the date from which the same should be computed. * * * "

We agree that it is not absolutely clear which statute of limitations the trial court was using. As a practical matter, it does not matter. Even if the trial court were applying the four-year statute of limitations, appellees were not prejudiced. The court determined that the statute of limitations did not begin to run until the proceeds of the fire insurance were paid out, *e.g.*, the deferred compensation, the loan repayment.

Since we have already rejected appellees' allegation of error by the trial court in failing to award any of Garvey Corporation or Gillen Trucking's profit, the issue of the statute of limitations has no practical effect on this case.

Therefore, the fifth cross-assignment has no merit.

In the sixth cross-assignment of error, appellees assert that the trial court erred in failing to grant judgment for prejudgment interest.

An award of prejudgment interest in a tort case is within the discretion of the trial court. *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055; *DiPiero v. Bianco* (Feb. 9, 1990), Trumbull App. No. 88–T–4090, unreported, 1990 WL 10958.

In *Mills v. Dayton* (1985), 21 Ohio App.3d 208, 21 OBR 222, 486 N.E.2d 1209, the court held that a party is not precluded from moving for prejudgment interest subsequent to the announcement of the verdict, but the motion must be made prior to the filing of the final judgment.

As appellants argue in their brief, a review of appellees' pleadings, complaints and motions indicates that appellees did not request prejudgment interest.

Under these circumstances, this court would be hard-pressed to say that the trial court abused its discretion in not awarding a remedy that was not originally requested.

Thus, the sixth cross-assignment is without merit.

Finally, in the seventh cross-assignment, appellees state that the trial court erred in failing to require appellants to account for the additional tax caused to Trumbull Bronze in the amount of $1,787.50 by virtue of improperly recording payments of compensation to J.L. Garvey and Michael S. Garvey.

Basically, appellees state that by treating part of the $67,000 paid to appellant J.L. Garvey as compensation for J.L. Garvey and Michael S. Garvey, this created tax liabilities for Trumbull Bronze of $7,167.10 as well as $1,787.50 in the employer's share of F.I.C.A. tax.

The trial court did find that the deferred compensation portion of the $67,000 payment was invalid. There was evidence presented regarding the tax implications. We agree that appellants should be responsible for the payment.

Therefore, we find merit in this assignment and reverse and remand to the trial court to enter judgment ordering appellants to reimburse the corporation for $7,167.10 for the tax liability the payment created, as well as $1,787.50 for the F.I.C.A. tax.

The seventh cross-assignment has merit.

In review, this matter is reversed and the cause is remanded, as to the seventh cross-assignment, and affirmed as to all other assignments and cross-assignments of error.

*Judgment accordingly.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.