[Cite as *Nordquist v. Schwartz*, 2012-Ohio-4571.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THOMAS NORDQUIST, | ) | |
| | ) | CASE NO.  11 CO 21 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| RICHARD SCHWARTZ, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:         Civil Appeal from Common Pleas
                                  Court, Case No. 08 CV 462


JUDGMENT:                         Affirmed.


APPEARANCES:
For Plaintiff-Appellee:           Attorney James Blomstrom
                                  26 Market Street, Suite 1200
                                  P.O. Box 6077
                                  Youngstown, OH  44501-6077

For Defendants-Appellant:         Attorney Douglas Ross
                                  1129 Niles-Cortland Road, SE
                                  Warren, OH  44484


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                  Dated: September 24, 2012

DeGenaro, J.

{¶1} Defendants-Appellant Whispering Pines Village, Inc. (WPV) appeals the March 8 and June 10, 2011 judgments of the Columbiana County Court of Common Pleas ordering it to pay $321,613.00 in attorney fees, expert witness fees and costs to Plaintiff-Appellee Thomas Nordquist, who had brought a successful shareholder derivative action on behalf of WPV. On appeal, WPV asserts that the trial court abused its discretion by awarding the fees and costs for four main reasons: (1) some of the attorney fees were incurred for reasons other than the prosecution of the shareholder derivative action; (2) the $321,613.00 award is much greater than the $88,651.70 judgment in the derivative action, thus making the award improper under the common fund doctrine; (3) the trial court improperly applied the substantial benefit doctrine to this case; and (4) Nordquist waived his right to seek attorney fees from WPV because he failed to submit that issue to the jury.

{¶2} WPV's arguments are meritless. There was competent credible evidence presented at the attorney fee hearing and presumptively at trial as well, a presumption we must make as a matter of law because the trial transcript was not filed in this appeal, to support the trial court's determination that the claims and defenses were so closely intertwined that separating attorney fees on a claim-by-claim basis was not possible. Again, because WPV did not file a trial transcript for this court to review, as a matter of law we must take as true the trial court's determination that absent this derivative lawsuit "the demise of the corporation was most probable," warranting the application of the substantial benefit doctrine instead of the common fund doctrine. As the record is incomplete, we cannot measure whether the trial court abused its discretion in making this determination. Finally, it was not necessary for Nordquist to submit the attorney fee issue to the jury because WPV was a nominal defendant, against which no claims were brought, and because the award of fees and expenses was equitable in nature, not punitive. Accordingly, the judgment of the trial court is affirmed.

## Facts and Procedural History

{¶3} Nordquist, Richard Schwartz, and Roseann Schwartz are equal shareholders in WPV, an Ohio close corporation, and RRT, an Ohio limited liability

company. Together RRT and WPV own the land and operate an independent living facility in Columbiana County.

**{¶4}** Nordquist, Richard and Roseann are all on the board of directors of WPV. Nordquist is the President, Richard is the Vice President and Roseann is the Secretary of WPV. Richard and Roseann are married and their son Robert Schwartz is both the Treasurer of WPV and an employee of the corporation, who acted as the day-to-day manager. Robert is married to Nordquist's daughter.

**{¶5}** On April 30, 2008, Nordquist filed a complaint in the Columbiana Court of Common Pleas alleging seven counts, three of which are germane to the issues in this appeal. Count I alleged a direct breach of fiduciary duty claim against Richard and Roseann. Nordquist alleged that Richard and Roseann permitted their son Robert to divert corporate funds for his own personal use and that they authorized Robert be paid excessive compensation. Count II asserted a shareholder derivative claim on behalf of WPV, and against Robert Schwartz, alleging that Robert was a "faithless servant" of WPV and breached his fiduciary duty by improperly diverting corporate assets. Nordquist sought recovery for WPV of any and all compensation paid to Robert during the duration of his "faithlessness." Count III alleged a shareholder derivative claim, on behalf of WPV and against Robert Schwartz on an unjust enrichment theory.

**{¶6}** On August 25, 2008, Richard and Roseann Schwartz filed an Answer and Counterclaim, asserting a breach of fiduciary duty claim against Nordquist for allegedly taking over $1,000,000 in unauthorized loans and advances from WPV and RRT. They also requested an accounting. In his answer to the Schwartzes' counterclaim, Nordquist admitted he had taken out a series of loans, but claimed they were authorized by WPV. The amount he owed on these loans thus became a disputed issue.

**{¶7}** The case proceeded to a jury trial, which ended in a mistrial. At the end of the second trial, the trial court dismissed Richard and Roseann's breach of fiduciary duty counterclaim because it found they lacked the legal authority to bring that claim against a minority shareholder. The remaining claims were submitted to the jury, which found in favor of Nordquist for his direct claims for breach of fiduciary duty against Richard and

Roseanne Schwartz and awarded $73,391.69 in compensatory damages. The jury found in favor of Richard and Roseanne on their counterclaim against Nordquist regarding payment of a promissory note and awarded $80,992.78 in compensatory damages. Finally, the jury found in favor of Nordquist, on behalf of WPV, with regard to his shareholder derivative action against Robert Schwartz, awarding $88,651.70 in compensatory damages and $1.00 in punitive damages. A transcript of the jury trial was not ordered by WPV for inclusion in the appellate record.

{¶8} On December 8, 2010, Nordquist filed a motion seeking an award of attorney fees, expert witness fees and case expenses against both WPV and Robert Schwartz. The parties briefed the issue and the case came for hearing on January 14, 2011. Nordquist presented three witnesses, Attorney Thomas Wilson, Attorney James Blomstrom, and Janice Jasinski, CPA. None of the defendants called witnesses; instead, they presented legal argument to the trial court.

{¶9} Wilson is an outside attorney expert retained by Nordquist for the hearing on the attorney fees and expenses. He reviewed the case file and the billings from Nordquist's counsel, Harrington, Hoppe and Mitchell (HHM). Wilson opined that the services rendered by HHM were reasonable and necessary. He testified that Nordquist's attorneys were competent and qualified to handle the case. Wilson also opined it was reasonable to retain the services of an accountant to review financial documents.

{¶10} On cross, Wilson conceded that there was not enough information in the billings to parse out which charges related to which claim, because the specific purpose of each billing item was not always clear. When asked about one item on May 20, 2008, which read: "Phone Conference with Tom Nordquist. Review Material Re: Loans," Wilson agreed that this charge was "probably" related to defending the Schwartzes' counterclaim regarding the promissory note, although he was not entirely certain because he was not familiar enough with that level of detail about the case. Wilson testified that if the purpose of a given charge was unclear, Nordquist's counsel would be able to provide more detailed information: "I think that's the kind of an item [the specific subject matter a billing item] that if the individual paying the bill wants to have more information they can contact

counsel and get it."  In the same vein, he later testified that if "the client has some question about [a particular] block of time and the effort that went in it, they can certainly ask and you can break it down further if it becomes necessary."

{¶11}  Wilson agreed that HHM incurred time for a variety of reasons, not just the derivative claim.  For example, time was billed for pursuing the direct claims against the Schwartzes, defending the counterclaim, pursuing the claim through the accountancy board against Roberta Lang (the former CPA of WPV), and even for attending corporate meetings.  Wilson alluded that all of that time was somehow related to the derivative action: "My viewpoint, this was a complex matter and there were lots of items that had to be brought together in order to move it forward."  However, Wilson agreed he did not have an opinion as to the amount of fees and expenses that were directly and only attributable to the shareholder derivative claim.

{¶12}  James Blomstrom, Nordquist's main trial attorney from HHM, also testified.  He stated that he reviewed the billings for the case.  He testified that billing was done in accordance with how commercial cases are typically billed.  Blomstrom testified that he went through the billing statements and omitted all the items clearly unrelated to the derivative claim against Robert Schwartz.  Later on cross, he agreed that three additional charges totaling $975.00 and relating to the formation of an S corporation for Ralph Beard should be deducted.  Blomstrom opined that the remaining services and charges were reasonable and necessary to prosecute the action.

{¶13}  Blomstrom testified that all of the claims, including Nordquist's direct claims for breach of fiduciary duty and the Schwartzes' counterclaim against Nordquist regarding the loans were directly related to the derivative action against Robert Schwartz and that therefore those charges were included in Nordquist's attorney fee request.  With regard to the counterclaim, Blomstrom elaborated that it is related to the claim against Robert Schwartz because he appeared to be his parents' agent with respect to those dealings.  Blomstrom also testified that time spent prosecuting a claim against former WPV CPA Roberta Lang was related to the derivative action against Robert Schwartz because "it was believed that Miss Lang would be relied upon by Robert Schwartz's counsel as a

witness in this case." However, Blomstrom noted that if the trial court did not agree that these charges were directly related to the derivative action, that they were identified in the billings and the court could separate them out.

{¶14} Blomstrom further noted that many of the charges, especially those related to document discovery and depositions, would be difficult to segregate by claim. Finally he testified that it was necessary to retain the services of an accounting firm, Schroedel, Scullen & Bestic (SSB), to review financial documents and identify questionable transactions made by Robert Schwartz.

{¶15} Janice Jasinski, CPA, an accountant with SSB testified. She identified the charges in Plaintiff's Exhibit 2, which are the invoices from SSB regarding services rendered for the present litigation. She described the services and opined they were necessary and the charges were reasonable and in line with billings for similar cases.

{¶16} In a March 8, 2011 judgment entry, the trial court awarded $321,613.00 in attorney fees, expert witness fees and case expenses against WPV and in favor of Nordquist, expressly stating that the decision was based upon "* * * the evidence presented at *both* the trial and the hearing on attorney fees * * *". The trial court also expressly stated that the March 8 entry was not a final appealable order, presumably because a show cause motion against Robert Schwartz remained pending. The trial court incorporated its March 8, 2011 judgment entry into a final order dated June 10, 2011, from which WPV filed a timely notice of appeal with this court on June 27, 2011. The trial court granted WPV's motion for stay of execution of judgment pending appeal, conditioned on the posting of a supersedeas bond. WPV did post a $388,512 bond, which was accepted by the trial court. WPV filed only the attorney fee hearing transcript on appeal; it did not file the trial transcript.

**Award of Attorney Fees, Expert Witness Fees and Case Expenses**

{¶17} In its sole assignment of error, WPV asserts:

{¶18} "The Trial Court erred in granting judgment in favor of Plaintiff-Appellee and against Defendant-Appellant for Plaintiff-Appellee's attorney fees, expert witness fees, and case expenses. *3/8/11 Judgment Entry, pages 8-10."*

**{¶19}** WPV's assignment of error consists of several distinct issues, each of which will be discussed in turn. Several pervasive matters will be discussed initially. First, a shareholder's derivative action is one brought by a shareholder in the name of the corporation to enforce a corporate claim. *See Weston v. Weston Paper & Mfg. Co.,* 74 Ohio St. 3d 377, 658 N.E.2d 1058 (1996).

**{¶20}** In Ohio, shareholder derivative actions are governed by Civ.R. 23.1 which states:

> In a derivative action brought by one or more legal or equitable owners of shares to enforce a right of a corporation, the corporation having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors and, if necessary, from the shareholders and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders similarly situated in enforcing the right of the corporation. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs.

**{¶21}** A shareholder plaintiff may recover attorney fees from the corporation in a derivative action. *Apicella v. PAF Corp.*, 17 Ohio App.3d 245, 250, 479 N.E.2d 315 (8th Dist.1984). *See, also, Biggins v. Garvey*, 90 Ohio App.3d 584, 602, 630 N.E.2d 44 (11th Dist.1993); *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 2002-Ohio-6167, 780 N.E.2d 290.

**{¶22}** "A trial court's determination of reasonable attorney's fees must generally

begin with a calculation of 'the number of hours reasonably expended on the case times an hourly fee[,]' " also termed the "lodestar figure." *Unick v. Pro-Cision, Inc.*, 7th Dist. No. 09MA171, 2011-Ohio-1342, ¶27, quoting *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). The requesting party bears the burden of proving evidence of any hours worked that would be properly billed to the client, proving the attorney's hourly rate, and demonstrating that the rate is reasonable. *Unick* at ¶28-29.

{¶23} Once the requesting party has adequately proven an appropriate number of hours worked and the attorney's reasonable hourly fee, the trial court may modify the baseline calculation by considering the factors listed in former DR 2–106(B), now found in Prof. Cond. R. 1.5, which include

> the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation. *Bittner* at 145-46.

{¶24} The trial court's award of attorney fees is reviewed for an abuse of discretion. *Biggins* at 602, *Hoeppner* at ¶49. An abuse of discretion means more than an error of judgment, but rather that the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Inseparability of Claims

{¶25} First, WPV asserts that the trial court erred in awarding Nordquist $321,613.00 in attorney fees, expert witness fees and case expenses because Nordquist

incurred a portion of those fees and expenses in pursuit of several claims and defenses that were separate from the shareholder derivative action. As discussed, those consisted of "direct" breach of fiduciary duty claims against Richard and Roseann Schwartz, along with Nordquist's defense of Richard and Roseann's counterclaim which involved a promissory note.

{¶26} In the trial court, as here, Nordquist asserted that all of the claims and defenses were intertwined, and that trying to separate out attorney fees for the derivative action was both impracticable and unnecessary. The trial court agreed, stating:

> This was rather complicated litigation. Defendants Richard and Roseann Schwartz are, as stated, parents of Robert. Defendant Robert is married to the Plaintiff's daughter. Unfortunately, the acrimony between certain of the parties was palatable during the course of this litigation. Plaintiff's counsel rightfully observes that the defense provided to the Defendants Schwartz [sic] was spirited. The Court finds that the claims of the parties were sufficiently intertwined such that trying to 'surgically' allocate fees and expenses on a claim-by-claim basis is not possible.

{¶27} Where "claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." *Bittner,* 58 Ohio St.3d at 145, *see also Fine v. U.S. Erie Islands Co., Ltd.*, 6th Dist. No. OT-07-048, 2009-Ohio-1531, ¶56.

{¶28} In *Bittner*, which involved an attorney fee award under the Consumer Sales Practices Act (CSPA), the Ohio Supreme Court held that the plaintiff was not entitled to recover attorney fees for time spent developing her breach of contract claim since that claim did not warrant an award of fees and was completely distinct from the CSPA claim, which did permit a fee award under the statute. *Bittner* at 145.

{¶29} Similarly, in *Fine*, the Sixth District held that the trial court erred by basing the attorney fee award on the entirety of billings submitted by plaintiff's counsel where

only the CSPA claim, not the breach of contract or specific performance claims, provided for such an award. *Fine* at ¶56. *Bittner* and *Fine* are distinguishable from the present case because they involved claims that could be easily separated from one another.

**{¶30}** WPV also relies upon *Unick v. Pro-Cision, Inc.*, 7th Dist. No. 09MA171, 2011-Ohio-1342, which coincidently involved the same law firm, HHM. In *Unick* this court concluded that the plaintiff failed to meet its burden of proving reasonable attorney fees *in part* because it did not segregate the fees that were actually applicable to the proceedings at issue. *Id.* at ¶37. Also problematic in *Unick*, though not an issue here, was the fact that the plaintiff failed to provide rates or hours worked by his attorneys. *Id.* at ¶38. The procedural posture of *Unick* also differs from this case. In *Unick*, the trial court denied the attorney fee motion, a distinction that is significant when the standard of review is abuse of discretion. *Id.* at ¶20-21.

**{¶31}** WPV also cites *Stults & Assoc. Inc. v. United Mobile Homes, Inc.*, 3d Dist. No. 9-01-09, 2001-Ohio-2240 in support of its argument. There the plaintiff sued for breach of several distinct contracts, only two of which contained attorney fee provisions. Nonetheless, the trial court awarded the plaintiff almost the entirety of the total attorney fees charged. The Third District reversed the attorney fee award, holding that awarding fees for time spent pursuing claims for the contracts that did not include attorney fee provisions was improper. *Id.* at *3. Further, the court rejected the plaintiff's argument that all of the causes of action were interrelated and difficult to separate, concluding that the failure of plaintiff's counsel to separately account for the time spent on the distinct contracts did not entitle them to fees for all of the contracts. More specifically, the court concluded that "[a]ny failure to [separately account for time billed] is a failure of proof as to fees properly to be recovered." *Id.* at *3-4.

**{¶32}** The present case also involves some level of accounting failure. Although HHM's billing statements were broken out by attorney, staff, rate and time; nonetheless the description given of the work performed for each entry was very broad in nature in many instances, and acknowledged as such by their expert. However, the nature of the present case is different from that in *Stults*. In *Stults*, the determination of which claim

permitted an attorney fee award was easily resolved by looking at the language of the contract at issue; some permitted an award of attorney fees while others did not. And as the Third District pointed out, Stults' attorneys knew from the inception of the suit that only two of the contracts provided for attorney fees and could have easily kept separate accounting records for each claim in order to meet their burden of proof. *Stults* at *4.

**{¶33}** By contrast, the determination of whether attorney fees are permitted in this case is more complex due to the nature of the case: a shareholder derivative action involving a closely-held corporation. The trial court determined that time spent by Nordquist's attorneys defending the counterclaim and pursuing the direct action against Richard and Roseann Schwartz was so intertwined with the shareholder derivative action that fees could be awarded for that time also; concluding that "the claims of the parties were sufficiently intertwined such that trying to 'surgically' allocate fees and expenses on a claim-by-claim basis is not possible." And the trial court expressly stated that in making its attorney fee award: "The Court has considered all filings made with respect to this issue *in light of the evidence presented at both the trial and the hearing* on attorney fees and finds in favor of the Plaintiff." (emphasis added)

**{¶34}** Nordquist and HHM's position was that almost all of the work performed on the case, even that in furtherance of other claims and defenses, was directly related to, and in fact intertwined with the shareholder derivative claim. Nordquist's attorney-expert witness agreed that the claims were interrelated, stating that it was "a complex matter and there were lots of items that had to be brought together in order to move it forward."

**{¶35}** Notably, Blomstrom, Nordquist's counsel, reviewed the billing statements and redacted all the items clearly unrelated to the derivative claim against Robert Schwartz, subtracting the fees billed for those items from the total fee request. During cross-examination Blomstrom agreed that three additional charges totaling $975.00 and relating to the formation of an S corporation for Ralph Beard should be deducted.

**{¶36}** Blomstrom maintained that all of the remaining fees and expenses, including those concerning Nordquist's direct claims for breach of fiduciary duty and the Schwartzes' counterclaim against Nordquist regarding the loans, were directly related to

the derivative action against Robert Schwartz. With regard to the promissory note counterclaim, Blomstrom elaborated that it is related to the claim against Robert Schwartz because Schwartz appeared to be his parents' agent with respect to those dealings. Blomstrom also testified that time spent prosecuting a claim against former WPV CPA Roberta Lang was related to the derivative action against Robert Schwartz because it was believed that Lang would be relied upon by Robert Schwartz's counsel as a witness at trial. Finally, Blomstrom testified that with respect to some aspects of pretrial preparation, namely time spent on discovery and preparing for depositions, it was simply not possible to separate time by claim.

{¶37} As the Ohio Supreme Court has noted: " '[t]he trial judge [that] participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.' " *Bittner*, 58 Ohio St.3d at 146, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (1985).

{¶38} This is especially true in this case because our knowledge is confined to information contained in the pleadings and the transcript of the attorney fees hearing. WPV did not order a trial transcript for inclusion in the appellate record, despite the trial court basing its attorney fees award upon the evidence presented at trial as well. The appellant bears the burden of producing all transcripts necessary to support its case on appeal. App.R. 9(B). Given this gap in the appellate record, we must defer to that decision, presuming the regularity of the proceedings in the absence of a trial transcript. *See Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980).

{¶39} Based on the record before us, we cannot conclude that the trial court abused its discretion. At first blush, a review of the billing statements and the testimony from the attorney fees hearing make the award susceptible to reversal and remand. However, the trial court relied upon trial testimony, which we do not have to test the trial court's award completely. Thus, we must presume that there was competent, credible evidence adduced at trial, *in addition* to evidence presented during the attorney fee

hearing to support the trial court's decision. Accordingly, for all of the foregoing reasons, WPV's first assignment of error is meritless.

### Common Fund Doctrine versus Substantial Benefit Doctrine

**{¶40}** Second and third, WPV asserts that the trial court erred by applying the substantial benefit doctrine, as opposed to the common fund doctrine, when awarding attorney fees, and that even under the substantial benefit doctrine the award was improper because the derivative suit did not convey a substantial benefit upon WPV.

**{¶41}** Pursuant to the "American Rule," each party in a lawsuit must generally bear its own attorney fees. *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179, 347 N.E.2d 527 (1976). In the area of corporate litigation, more specifically, shareholder suits, several common-law exceptions to the American Rule have developed, namely, the common fund doctrine, and its extension, the substantial benefit doctrine. These allow the shareholder plaintiff in a successful suit to recoup some or all of his or her attorney fees. The rationale for these exceptions is that the corporation would be unjustly enriched if the shareholder bringing the suit on the corporation's behalf was forced to shoulder all of the costs of litigation. *See generally*, *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 780 N.E.2d 290, ¶53-54, citing *Trustees v. Greenough*, 105 U.S. 527, 537, 26 L.Ed. 1157 (1881), and *Smith v. Kroeger*, 138 Ohio St. 508, 514-515, 37 N.E.2d 45 (1941) (discussing common fund doctrine); and *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-1105 (6th Circ.1974), citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (discussing substantial benefit doctrine.)

**{¶42}** The common fund doctrine allows a representative plaintiff who succeeds in creating or enlarging a fund to recover attorney fees from that fund. *Hoeppner* at ¶53. The substantial benefit doctrine extends the common fund doctrine by allowing the shareholder to recover some or all of his attorney fees even when there has been *no pecuniary recovery* so long as there is substantial benefit to the corporation. *See Mills,* 396 U.S. 375; *Abrams v. Siegel*, 166 Ohio App.3d 230, 2006-Ohio-1728, 850 N.E.2d 99. The idea behind this is that "the expenses incurred by one shareholder in the vindication

of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in the corporation's favor." *Ramey* at 1195.

{¶43} In applying these doctrines, the trial court may still deviate up or down from the requested fees pursuant to the factors discussed in *Bittner*, i.e., the time and labor involved, the novelty and difficulty of the questions, the professional skill required, the attorney's inability to accept other cases, the fee customarily charged, the amount involved and the results obtained, any necessary time limitations, the nature and length of the attorney/client relationship, the experience, reputation, and ability of the attorney, and whether the fee is fixed or contingent. *Bittner*, 58 Ohio St.3d at 145-146. And, as discussed, a trial court's decision regarding attorney fees will not be reversed absent an abuse of discretion. *Biggins* at 602, *Hoeppner* at ¶49.

{¶44} WPV argues that the award of $321,613.00 was unwarranted under the common fund doctrine. It is true that some courts, in applying the common fund doctrine, have limited the amount of fees to the actual amount recovered by the shareholder plaintiff on behalf of the corporation. *See, e.g.,. Howes v. Atkins*, 668 F.Supp. 1021 (E.D.Ky.1987). However in the present case, the trial court was applying the substantial benefit doctrine, which, as noted, looks beyond the monetary damages awarded (if there were any) and instead to whether there was a "substantial benefit" to the corporation.

{¶45} Here the trial court concluded:

> Plaintiff rightly observes that the benefit to the Corporation goes beyond the amount of the judgment received against Robert on behalf of WPV. WPV benefited by having the improper conduct of Robert Schwartz exposed such that the corporation can guard against a repeat of that conduct in future operations. Had his conduct gone unchecked, the Court finds that the demise of the corporation was most probable.

{¶46} Notably, in reaching this conclusion, the trial court expressly stated that it considered not only the briefs and the evidence presented at the attorney fee hearing but

also the evidence presented *at trial*. Nordquist correctly notes that absent a full trial transcript, this court has no way of independently determining the correctness of the trial court's finding that absent the derivative suit WPV's demise would have been "most probable." Absent a trial transcript we must presume the regularity of the proceedings and correspondingly that the trial court's factual finding was correct. *See Knapp*, 61 Ohio St.2d at 199.

{¶47} Taking the trial court's finding regarding the probable demise of WPV to be correct, the trial court reasonably concluded that WPV should pay Nordquist's fees pursuant to the substantial benefit doctrine. This case is analogous to *Ramey,* 508 F.2d 1188, *supra*, which involved an award of $865,000 in attorney fees and $35,115.96 in expenses to the plaintiffs who brought shareholder derivative actions where those claims had been dismissed on mootness grounds after trial but prior to adjudication, and therefore the corporation received no pecuniary benefit from the suit. The Sixth Circuit concluded that the derivative suits conferred a substantial benefit on the corporation, namely that they succeeded in delaying the consummation of a risky stock repurchase plan that would have leveraged the entire multi-million dollar asset value of the company. *Id.* at 1194-1195.

{¶48} Similarly, in *Abrams*, 166 Ohio App.3d 230, *supra*, the Eighth District awarded attorney fees where there was no common fund, instead applying the substantial benefit doctrine, where the lawsuit prevented a 50% shareholder from filing false and fraudulent income tax returns, keeping three sets of books for the business, and draining funds in willful violation of a written employment contract. *Id.* at ¶71-73.

{¶49} As Nordquist points out, the present case presents a more compelling set of circumstances for the application of the substantial benefit doctrine than the situations in *Ramey* and *Abrams*. Avoiding the "most probable demise" of the corporation arguably conveys a greater benefit than avoiding a risky stock repurchase plan or preventing a 50% shareholder from perpetrating fraud and draining corporate funds.

{¶50} In short, the trial court's decision to order WPV to pay attorney fees, expert witness fees and case expenses in an amount much greater than Nordquist's recovery on

behalf of WPV, was proper. Accordingly, the second and third branches of WPV's sole assignment of error are meritless.

## Waiver

{¶51} Fourth and finally, WPV asserts that Nordquist waived his right to seek attorney fees from WPV because he failed to submit that issue to the jury. Nordquist counters that he was not required to submit the issue to the jury because it arose in the context of a shareholder derivative action, meaning that no actual claim had been brought against the corporation. The trial court agreed with Nordquist, and this was the correct determination.

{¶52} The cases cited by WPV in support of its waiver argument, namely *Digital Analog & Supply Corp. v. North Supply Co.*, 63 Ohio St.3d 657, 590 N.E.2d 737 (1992); and *Physicians Diagnostic Imaging v. Grange Ins. Co.,* 8th Dist. No. 73088, 1998 WL 655503 (Sept. 24, 1998), are distinguishable from the present case because they involved situations where attorney fees were being requested in tandem with punitive damages. Nordquist is correct that the attorney fee award in this case was *equitable* in nature, not punitive. And as Nordquist correctly notes (and even WPV concedes in its brief), there were no actual claims against WPV, rather WPV remained a passive litigant due to its involvement only as nominal defendant vis-à-vis Nordquist's shareholder derivative action.

{¶53} Further, a similar waiver argument was raised but rejected by the Eighth District in *Hoeppner*, supra, 150 Ohio App.3d 216:

> Defendants argue that, pursuant to *Digital & Analog Design Corp.*, plaintiffs may not recover attorney fees and expenses under the common-fund doctrine because they did not submit the issue of attorney fees to the jury. Defendants fail to offer any authority, however, to indicate that *Digital* and its progeny apply to the common-fund doctrine, and we refuse to extend *Digital* in a way that would limit a trial court's ability, in exercise of its equitable jurisdiction, to apply the common-fund doctrine. We note that,

while application of the common-fund doctrine apportions fees equally among those who will benefit from the fund, it does not increase the amount of plaintiffs' award against defendants. Accordingly, to the extent that we conclude that the trial court did not abuse its discretion when it granted in part plaintiffs' motion to recover attorney fees and expenses by utilizing the common-fund doctrine, we overrule in part defendants' third assignment of error. *Hoeppner* at ¶55.

{¶54} Here the trial court applied the substantial benefit doctrine, which, as discussed, is equitable in nature and is considered an extension of the common fund doctrine. The logic used by the Eighth District in *Hoeppner* is sound and applies to this case.

{¶55} Finally it should be noted that following *Digital Analog*, the Ohio Supreme Court retracted its position about the necessity of submitting attorney fees to the jury. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 557-558, 644 N.E.2d 397 (1994). As the Third District explained in *Maynard v. Eaton Corp.*, 3d Dist. No. 9-03-48, 2004-Ohio-3025, ¶37:

 * * * [I]n *Zoppo*, the Court specifically rejected its previous determination in *Digital*, that a trial court must submit to a jury the issue of whether attorney fees should be awarded in a tort action. *Zoppo*, 71 Ohio St.3d at 557, 644 N.E.2d 397, citing *Digital*, 63 Ohio St.3d at 663, 590 N.E.2d 737. Thus, although submitting the issue to a jury of whether attorney fees should be awarded and the dollar amount of such award is a permissible action by the trial court, *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41, 543 N.E.2d 464; *Digital*, 63 Ohio St.3d at 665, 590 N.E.2d 737, neither party is entitled to have the issue determined by a jury, *Zoppo*, 71 Ohio St.3d at 557, 644 N.E.2d 397.

*See also Neal-Pettit v. Lahman*, 125 Ohio St.3d 327, 2010-Ohio-1829, 928 N.E.2d 421,

¶15: ("*Digital's* discussion of attorney fees was explicitly characterized as dicta in *Zoppo* * * * In *Zoppo*, the court 'reject[ed] the reasoning espoused in *Digital* which treats the right to trial by jury in cases assessing attorney fees the same as the right in cases of punitive damages.'").

**{¶56}** Thus, based on all of the above, Nordquist did not waive his right to recover his attorney fees from WPV as part of the derivative action for failing to submit the issue to the jury. This final branch of WPV's sole assignment of error is meritless.

## Conclusion

**{¶57}** In sum, WPV's sole assignment of error is meritless. There was competent credible evidence presented at the attorney fee hearing and presumptively at trial as well, a presumption we must make as a matter of law because the trial transcript was not filed in this appeal, to support the trial court's determination that the claims and defenses were so closely intertwined that separating attorney fees on a claim-by-claim basis was not possible. Again, because WPV did not file a trial transcript for this court to review, as a matter of law we must take as true the trial court's determination that absent this derivative lawsuit "the demise of the corporation was most probable," warranting the application of the substantial benefit doctrine instead of the common fund doctrine. As the record is incomplete, we cannot measure whether the trial court abused its discretion in making this determination. Finally, it was not necessary for Nordquist to submit the attorney fee issue to the jury because WPV was a nominal defendant, against which no claims were brought, and because the award of fees and expenses was equitable in nature, not punitive. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.